IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA COLLINS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant.<br>_____/ | CASE NO. CV-F-04-5122 LJO<br><br>**DECISION ON SOCIAL SECURITY COMPLAINT**<br>(Docs. 11, 14, 15.) |

**INTRODUCTION**

Plaintiff Brenda Collins ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision finding that plaintiff is not disabled and is ineligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate Judge, and by a May 28, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further proceedings.

# BACKGROUND

## Plaintiff's Personal Background

Plaintiff is age 43, has an 11th grade education, completed vocational training as a certified nursing assistant, and worked as a certified nursing assistant during July 2001 to November 2001. (AR 12, 28, 90, 95.)

## Administrative Proceedings

On June 24, 2002, plaintiff protectively filed her SSI application with the Social Security Administration ("SSA") to claim disability since November 3, 2001 from severe chronic arthritis and hepatitis C. (AR 79, 89.) With its September 30, 2002 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined plaintiff's condition is not severe enough to prevent her to work. (AR 62.)

On October 9, 2002, plaintiff filed her Request for Reconsideration to claim that "due to the arthritis I am unable to participate in substantial gainful employment because of pain of arthritis." (AR 66.) With its January 21, 2003 Notice of Reconsideration, SSA denied plaintiff's claim and again determined that plaintiff's condition is not severe enough to prevent her to work. (AR 68.)

On February 19, 2003, counsel was appointed for plaintiff. (AR 23.) On February 24, 2003, plaintiff filed her Request for Hearing by Administrative Law Judge to claim SSA's decision "does not reflect my true condition." (AR 72.) After a September 23, 2003 hearing, the ALJ concluded plaintiff is not disabled and has the residual functional capacity to perform the full range of light work. (AR 17.)

Plaintiff submitted to SSA's Appeals Council a November 6, 2003 Request for Review of Hearing Decision/Order to claim she is unable to work. (AR 6.) On December 8, 2003, the Appeals Council denied plaintiff's request for review to render the ALJ's decision as the Commissioner's final determination subject to this Court's review. (AR 3.)

## Medical History And Records Review

### *Medical Imaging*

November 14, 2001 x-rays of plaintiff's knees revealed post surgical changes, two tendon fixations screws on the lateral side of plaintiff's left leg. (AR192.) The x-rays further revealed medial joint narrowing and minimal joint effusion to plaintiff's left leg. (AR 192.) As to the right knee, mild

medial degenerative joint narrowing was noted. (AR 192.)  In sum, the x-ray report noted "no acute findings overall." (AR 192.)

September 20, 2002 right hand x-rays revealed neither significant malalignment, fractures nor acute findings. (AR 176.)  A September 20, 2002 CT scan of plaintiff's knee joints noted as to the right knee, mild loss of joint space and slight irregularity of the tibial articular surface to indicate chondromalacia. (AR 175.)  As to the left knee, there was spurring of the tibial spines, mild narrowing of the medial joint compartment, and osteophytes. (AR 175.)  The CT scan report noted no evidence of recent fracture, lytic or blastic lesions. (AR 175.)  A December 16, 2002 CT brain scan was "essentially negative." (AR 174.)

### *Jerry C. Fox, M.D., Treating Physician*

Plaintiff treated with Jerry C. Fox, M.D. ("Dr. Fox"). On November 14, 2001, plaintiff complained of knee pain, and Dr. Fox noted crepitus to plaintiff's knees. (AR 161.) On November 30, 2001, Dr. Fox noted swelling of plaintiff's knees and diagnosed arthritis and hepatitis C. (AR 160.) On December 7, 2001, Dr. Fox noted swelling and crepitus and diagnosed arthritis. (AR 159.) On March 26, 2002, plaintiff complained that her shoulders and legs ached and requested to continue disability. (AR 157.) Dr. Fox assessed unstable knees. (AR 157.)

On May 28, 2002, plaintiff complained her arthritis medication was not helping and of arm and hand pain. (AR 155.) Plaintiff weighed 268 pounds. (AR 156.) On July 10, 2002, plaintiff complained of hand pain and headaches. (AR 153.) On August 8, 2002, plaintiff complained of hand pain and worsening headaches. (AR 152.) On November 6, 2002, plaintiff complained of lower back pain, headaches and body aches. (AR 150.)

On March 5, 2003, plaintiff complained of left big toe pain and frequent headaches. (AR 199). Dr. Fox completed a March 5, 2003 form to indicate that plaintiff is able to: (1) sit four hours of an eight-hour workday; (2) stand two hours in an eight-hour workday; (3) walk two hours in an eight-hour workday; (3) occasionally lift/carry up to five pounds; and (4) use hands for simple grasping. (AR 149.) Dr. Fox noted plaintiff is unable to: (1) engage in pushing and pulling or arm controls and fine manipulation; (2) use her feet for leg controls; and (3) bend, squat, crawl, climb or reach. (AR 149.) Dr. Fox also completed a March 5, 2003 questionnaire to indicate plaintiff is precluded from performing

1  full-time work at any exertional level, including sedentary level. (AR 148.) Dr. Fox noted that during
2  an eight-hour day, plaintiff is able to sit four hours and stand and walk two hours and would need to lie
3  down or elevate her feet one hour. (AR 148.) Dr. Fox further noted plaintiff is unable to lift forward,
4  bend and climb stairs. (AR 148.) Dr. Fox gauged plaintiff had been 90 percent disabled since October
5  26, 2001. (AR 148.)

6  On April 15 and 23, 2003, plaintiff complained of hand pain and swelling. (AR 198.) On
7  August 28, 2003, plaintiff requested medication stronger than Vicodin and weighed 258 pounds. (AR
8  195.)

### *Tomas B. Rios, M.D., Consultative Internist*

10  Tomas B. Rios, M.D. ("Dr. Rios"), a board certified internist, conducted a September 9, 2002
11  consultative examination of plaintiff, whose chief complaints were arthritis and hepatitis C. (AR 123.)
12  Plaintiff noted to Dr. Rios that she remained able to drive and perform light housework. (AR 123.) Dr.
13  Rios observed that plaintiff was not in acute distress and "moves about the room without any significant
14  gait alterations." (AR 124.) Dr. Rios noted plaintiff's normal gait pattern and ability to tandem walk
15  without difficulty. (AR 124.) Plaintiff's fine and gross finger manipulation is intact with no effusion
16  or crepitation to her wrists. (AR 125.) Dr. Rios found neither inflammation to plaintiff's knees nor
17  laxity of the joints but noted "some palpable crepitation." (AR 125.) Dr. Rios noted that plaintiff's
18  motor strength is graded at 5/5 in upper and lower extremities and that "good grip strength is observed
19  bilaterally." (AR 125.)

20  Dr. Rios diagnosed status post ORIF (open reduction internal fixation) of fractured left tibia,
21  arthralgia/myalgia, and hepatitis C. (AR 126.) Dr. Rios assessed:

> There is some residual tenderness with some pain on knee flexion/extension maneuver and some crepitation without any laxity of the joints. This claimant therefore will be precluded from frequent squatting and climbing activities or prolonged crawling or crouching activities. She also has some tenderness on her MCP joints. She will have difficulty with forceful grasping and twisting with both hands. With regards to hepatitis C, there is no stigmata of significant liver compromise on today's presentation. (AR 126.)

### *Physical Residual Functional Capacity Assessment*

27  Lavanya Bobba, M.D. ("Dr. Bobba"), completed a September 24, 2002 Physical Residual
28  Functional Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 50 pounds occasionally and

4

25 pounds frequently; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; (4) push/pull subject to the lift/carry limitations; and (5) occasionally climb, balance, stoop, kneel, crouch and crawl. (AR 127-129.) Dr. Bobba found neither manipulative, visual, communicative nor environmental limitations. (AR 130-131.)

Anne M. Khong, M.D. ("Dr. Khong"), completed a January 17, 2003 Physical Residual Functional Capacity Assessment to conclude plaintiff is able to: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk about six hours in an eight-hour workday; (3) sit about six hours in an eight-hour workday; (4) push/pull subject to the lift/carry limitations; and (5) climb, balance, stoop, kneel, crouch and crawl occasionally. (AR 137-139.) Dr. Khong found neither manipulative, visual, communicative nor environmental limitations. (AR 140-141.)

*Medications*

Plaintiff's medications have included Celebrex 200 mg, Darvocet, Vioxx, Soma, Prevacid, Pravachol, Hydrochlorothiazide, Butalbital, Singular 10 mg, Albuterol, Evista, Methocaramol, Trazodon, Sucralfate, Floricet, Metroclopramide, Azmacort, Triamterene, Vicodin, Robaxin and Carisoprodol. (AR 94, 120-122.)

**Plaintiff's Activities And Testimony**

*Reports And Questionnaires*

Plaintiff completed a June 28, 2002 Disability Report Adult to note she is 5-foot-6 and weighs 270 pounds and to claim disability from severe chronic arthritis and hepatitis C since November 30, 2001. (AR 88.) Plaintiff's ability to work is limited by severe pain in hands, knees and legs, liver problems, and chronic swelling of feet and hands. (AR 89.) Plaintiff stopped working because of pain and swelling in her hands, feet and knees, inability to stand for "a long period of time," and difficulty kneeling. (AR 89.) Plaintiff performed clerical, inventory, assembly and similar work prior to her most recent employment as a certified nursing assistant. (AR 90, 98.)

In her October 8, 2002 Reconsideration Disability Report, plaintiff claimed her condition had worsened in that pain caused more difficulty to stand and walk, she experienced swelling in both knees and pain and swelling in her hands to produce grasping difficulty and inability to lift heavy objects. (AR 110, 112.) Plaintiff noted: "I have difficulty [to] clean my house because of pain in my legs and a lot

of times I can not cook because of swelling of my hand won't allow me to open things." (AR 112.) Plaintiff has difficulty to dress because lifting her arms is painful. (AR 113.)

Plaintiff completed a November 13, 2002 Pain Questionnaire to note she experiences leg, knee and hand pain which she described as "a severe ache, cramps in hand swelling." (AR 116.) Pain spreads "all over" plaintiff's body "everyday, continuously." (AR 116.) Her pain results from the "weather condition, sitting too long, standing, reaching, doing certain house chores, bending." (AR 116.) Medication sometimes relieves her pain and causes drowsiness, sleep, lack of coordination, inability to function and headaches. (AR 116.) Pain first affected plaintiff's activities in February 2001. (AR 117.) Plaintiff needs assistance with daily chores and is able to walk 100 feet, stand 10-15 minutes and sit 30 minutes. (AR 118.)

In a February 19, 2003 statement, plaintiff noted that her condition had worsened due to arthritis, asthma and hepatitis C and that she experienced trouble with daily living activities. (AR 119.)

***Plaintiff's Hearing Testimony***

At the September 23, 2003 ALJ hearing, plaintiff testified that she is 5-foot-4 and weighs 258 pounds, is left-handed, has a driver's license, and drives. (AR 28-29.) Plaintiff last worked in October 2000 as a certified nursing assistant and had performed such work for a year. (AR 29.) Plaintiff left her job because she has arthritis and hepatitis C. (AR 29.) Plaintiff claims that her doctor told her that she is "too unstable. I lose my balance." (AR 32.) As a certified nursing assistant, plaintiff lifted patients weighing up to 150 pounds. (AR 30.)

Plaintiff has arthritis in her knees, hands and back and has treated with Dr. Fox for two years to address her condition. (AR 32.) Plaintiff takes no medication for her hepatitis C. (AR 32-33.) Plaintiff has asthma and uses inhalers everyday. (AR 32.) At the hearing, plaintiff wore wrist splints for her tendinitis for which she has experienced pain for six months. (AR 33.) Plaintiff has worn wrist splints "all day" for a month but has noticed no change. (AR 38-39.) Plaintiff has not been diagnosed with carpal tunnel syndrome. (AR 33.) Plaintiff has wrist swelling and is able to lift no more than pots and pans. (AR 33.) Plaintiff could not raise her right arm to be sworn at the hearing. (AR 27.) About once a week, plaintiff's hands stay numb for a few minutes. (AR 45.)

As for plaintiff's back, she has a degenerative disk and scoliosis. (AR 35.) Plaintiff's pain is

1  worst in her back. (AR 37.) Plaintiff measures her back pain after medication as eight on a scale of 10
2  being the worst. (AR 37.) Plaintiff has experienced back pain for a year. (AR 37.) Plaintiff's feet and
3  knees swell. (AR 35.) In 1985, plaintiff had knee surgery. (AR 35.) Plaintiff uses a non-prescribed
4  cane. (AR 38.) Plaintiff lies down "all day" to elevate her legs to help with swelling. (AR 38.) Plaintiff
5  is able to walk one block and to stand 20 minutes. (AR 39.) Plaintiff has no trouble sitting. (AR 39.)
6  Plaintiff is unable to bend from her waist, kneel, stoop or squat without pain. (AR 39.) Plaintiff has
7  GERD whereby her esophagus opening is too wide so that food comes out. (AR 36.) Plaintiff takes
8  Prevacid for her esophagus condition. (AR 36.)

9   Plaintiff lives with her three school age children who do the cooking and housework. (AR34.)
10 Plaintiff does a little house work, including cleaning her room and straightening up. (AR 40.) Plaintiff
11 is alone during the day when her children attend school. (AR 40.) Plaintiff is unable to sleep during the
12 night. (AR 39.) Initially, plaintiff noted her medications cause no side effects but later claimed they
13 make her sleepy. (AR 37, 40.)

14  Plaintiff has a car and drives to her nearby grocery store. (AR 41, 44.) Plaintiff has a gentleman
15 friend whom she has known for two years and whom visits her infrequently. (AR 41.) Plaintiff traveled
16 to Los Angeles to her daughter's house for a Mother's Day visit. (AR 42.) When plaintiff's sister from
17 out of state visited plaintiff, they stayed at plaintiff's home because of plaintiff's pain. (AR 43.)
18 Plaintiff attended her daughter's chorus recital. (AR 44.) Plaintiff neither visits friends nor engages in
19 hobbies or sports although she has an exercise bike which she rides "every now and then." (AR 45.)
20 Plaintiff's doctor told her to ride a bike as often as possible to help her knee swelling. (AR 46.)

21  Plaintiff has no problem to pick up small things occasionally and is able to pick up a skillet using
22 both hands. (AR 46-47.) Plaintiff could not pick up small things all day because her wrists would hurt.
23 (AR 47.) Hepatitis C does not cause plaintiff chest pain. (AR 48.) Plaintiff has had asthma since she
24 was a young adult and uses inhalers which help. (AR 48.) Plaintiff smokes two or three cigarettes per
25 day. (AR 48.)

26 <center>**The ALJ's Findings**</center>

27  In his October 28, 2003 decision, the ALJ identified the primary issue as whether plaintiff is
28 disabled. In determining plaintiff is not disabled, the ALJ found:

<center>7</center>

1.  Plaintiff has a history of status post ORIF of fractured proximal left tibia, arthralgia/myalgia, and hepatitis C but lacks an impairment or combination of impairments listed in or medically equal to one in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").
2.  Plaintiff's allegations of pain and limitations are not credible.
3.  Plaintiff has the residual functional capacity to perform physical exertion requirements for work, except lifting/carrying more than 10 pounds frequently and 20 pounds occasionally, and to perform the full range of light work.
4.  Based on plaintiff's residual functional capacity, age, education and work experience, 20 C.F.R. § 416.969 and Rule 202.18 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2, direct a conclusion of not disabled.  (AR 17.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1] Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995. If there is

---

[1] "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988). Plaintiff bears the burden to prove that she is disabled which requires presentation of "complete and detailed objective medical reports of her condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Here, plaintiff claims disability based on severe pain and swelling in her hands, knees, legs and feet, chronic arthritis and hepatitis C. As discussed below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that plaintiff is not disabled is based on proper legal standards and substantial evidence.

## **Obesity**

Plaintiff contends the ALJ failed to properly evaluate effects of her obesity on her other impairments. Social Security Ruling ("SSR") 02-01p addresses evaluation of obesity and explains:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus-even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea.

SSA considers obesity to determine whether a claimant has a medically determinable impairment, the impairment(s) is severe, the impairment meets or equals the requirements of an impairment in the Listing of Impairments, and the impairment(s) prevents the claimant from doing past relevant work and other work that exists in significant numbers in the national economy. SSR 02-01p. SSA will find obesity

is a "severe" impairment when, along in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. SSR 02-01p.

SSA evaluates obesity to assess residual functional capacity:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. . . .
>
> . . .
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain function over time. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

SSR 02-01p.

An ALJ has responsibility to determine the effect of a claimant's obesity on the claimant's other impairments, ability to work and general health, given the presence of the other impairments. *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

Plaintiff complains that the "ALJ did not even find Collins' obesity to be a severe impairment." The ALJ noted:

> The state agency medical consultant [Dr. Khong] limited claimant to a light level of exertion taking into account of claimant's body mass index of 47 and her complaints of knee pain (Exhibit 5F, p. 2), which seems reasonable considering the lack of clinical, x-ray and/or laboratory findings. There is a failure of proof on the part of the claimant and a lack of objective findings to substantiate a more restricted functional assessment. (AR 16.)

Opinions of a nonexamining medical advisor, such as Kr. Khong, may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Morgan*, 169 F.3d at 600. Dr. Khong assessed a light residual functional capacity considering plaintiff's body mass index and knee complaints and supported such assessment with Dr. Rios' consistent opinion. The

ALJ's reliance on Dr. Khong's assessment was appropriate given the lack of contradictory clinical, x-ray or laboratory findings. Moreover, Dr. Bobba noted plaintiff's 43 body mass index and found plaintiff did not meet or equal criteria for the Listing of Impairments. (AR 136.)

Dr. Fox did not directly address obesity in his assessment, and the ALJ correctly observed:

> Regarding the diagnosis of degenerative arthritis, Dr. Fox based this finding on the x-rays, laboratory, and clinical findings. Yet, there are no x-rays of the lumbosacral spine in the record, and clinical findings showed intermittent swelling and some crepitus in the knees only on some physical examinations (Exhibit 6F, pp. 4-18). X-rays of the knees only showed post surgical changes on the left and no other acute findings (Exhibit 6F, pp. 29, 46). As to the laboratory results, claimant's rheumatoid factor was also negative (Exhibit 7F, p. 3). In view of the above, the undersigned rejects Dr. Fox's assessment of claimant's functional capacity since it appears that it is based on claimant's subjective complaints that outweigh the objective findings. Merely assigning extreme limitation to an individual without significant supporting documentation does not present a persuasive argument and accordingly is not binding upon the undersigned or the Social Security Administration, and is not entitled to significant evidentiary weight. (AR 15-16.)

This Court finds no error in the ALJ's treatment of Dr. Fox's assessment in that a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted. *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[2] An ALJ may reject a treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical findings to support its conclusion." *Magallanes,* 881 F.2d at 751. Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020. An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See, e.g., Sandgathe*, 108 F.3d at 980. Here, the ALJ adequately supported rejection of Dr. Fox's brief, conclusory assessment which is unsupported with clinical findings.

Moreover, the record does not indicate that plaintiff's obesity exacerbated her alleged impairments. "As obesity is not a separately listed impairment, a claimant will be deemed to meet the

---

[2] A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.

11

1 requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a
2 listing.'" *Burch*, 400 F.3d at 682 (quoting SSR 02-01p.)  Plaintiff fails to satisfy her burden to provide
3 evidence to support the diagnosis and findings of an impairment in the Listing of Impairments. *See*
4 *Burch*, 400 F.3d at 683. A "claimant carries the initial burden of proving a disability." *Burch*, 400 F.3d
5 at 683; *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

"Equivalence may also be determined if a claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment." *Burch*, 400 F.3d at 682.  However, SSR 02-01p explains that an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record."  The ALJ was "not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment). Plaintiff did not attempt to establish equivalence, and as such, the ALJ was precluded to engage in assumptions about the effects of plaintiff's obesity on other impairments.

This Court finds no error in the ALJ's residual functional capacity assessment. To evaluate obesity to determine a claimant's residual functional capacity, an ALJ "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-01p. Social Security Ruling 96-8p further notes:

> In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."  While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of the claim.

Plaintiff's obesity is not critical to her claim's outcome, and plaintiff fails to demonstrate otherwise.

In addition, plaintiff complains the ALJ failed to further develop the record "to illicit adequate testimony from Collins regarding her obvious obesity." "An ALJ's duty to develop the record further

is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). Plaintiff points to no ambiguous testimony or other evidence and fails to demonstrate an inadequate record to invoke the ALJ's duty to develop the record further. The record is limited to notations of plaintiff's weight with no detailed reference to its effects. Moreover, plaintiff's counsel had latitude to develop plaintiff's testimony regarding plaintiff's weight and alleged limitations. Substantial evidence supported the ALJ's residual functional capacity finding without the need to further develop the record.

### **Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's subjective complaints and to provide proper credibility findings. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

13

*See also* S.S.R. 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. Treatment, other than medication, for relief of pain;
5. Functional restrictions;
6. Claimant's daily activities;
7. Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and
8. Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see* 20 C.F.R. §§ 404.1529, 416.929.

After reviewing the medical record, the ALJ summarized in detail plaintiff's hearing testimony and noted plaintiff takes no medication for hepatitis C and uses a non-prescribed cane and inhalers but continues to smoke. (AR 14.) The ALJ found "it significant that claimant has not received treatment consistent with a chronic pain syndrome such as physical therapy, biofeedback, acupuncture, use of TNS unit, or attendance at a pain management clinic." (AR 14.) The ALJ proceeded to explore plaintiff's credibility in detail:

> The undersigned observed that claimant wore braces on both of her wrists. Claimant did not raise her right upper extremity when she recited the oath. Instead, she kept it by her side. In [m]aking these observations the undersigned is not basing his entire determination upon claimant's appearance at the hearing alone. This is but one factor which has been considered along with all of the other evidence of record.

---

[3] Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

> After review of the evidence in its entirety, the undersigned noted a few discrepancies that [cause] some doubt as to claimant's credibility and the severity of her impairments. For instance, claimant alleges hepatitis C, but as she testified, she experiences no symptoms from the hepatitis C, and laboratory findings show no evidence of rheumatoid arthritis (Exhibit 7F, p. 3). Additionally, liver function testing showed no elevation in her transaminases and her viral load is less than 1,000. Dr. Rios noted that claimant had no stigmata of significant liver compromise (Exhibit 1F, p. 4).
>
> Claimant stated she suffers from asthma, but yet she continues to smoke.
>
> Claimant testified she wears wrist braces, but the clinical evidence only showed claimant complained of swollen hands on April 23, 2003 (Exhibit 7F, p. 2). Thereafter, the evidence fails to show claimant has continued to experience discomfort in her hands or wrists. Additionally, an x-ray of the right hand that was done in September 2002 revealed no acute findings (Exhibit 6F, p. 30). Claimant did testify she has had this condition for the last six months and she received the braces two months ago. Yet, Dr. Fox's last clinic notes dated August of 2003, make no mention of claimant's wrist complaints or any prescription for wrist splints (Exhibit 7F, p. 1). . . .
>
> Claimant testified she lies around all day, but yet she stated she is able to drive, shop, cook, does light housework, and she maintains a relationship with her friend, Stanley Butler. (AR 15.)

This Court is not in a position to second guess the credibility determinations in that the ALJ made sufficiently specific findings to substantiate that he did not arbitrarily discredit plaintiff. The objective medical evidence fails to substantiate the severity of plaintiff's claims. November 14, 2001 x-rays of plaintiff's knees revealed "no acute findings overall." (AR 192.) As noted by the ALJ, September 20, 2002 right hand x-rays revealed no acute findings. (AR 175.) A September 20, 2002 CT scan of plaintiff's knee joints was unremarkable. (AR 175.) As of September 2002, plaintiff noted to Dr. Rios that she was able to drive and do light housework. (AR 123.) Dr. Rios observed that plaintiff was not in acute distress and "moves about the room without any significant gait alterations." (AR 124.) Lastly, plaintiff's pain management was limited to medication, and plaintiff failed to follow Dr. Fox's recommendation of biking which she claimed helped to reduce knee swelling.

As to his credibility determination, the ALJ properly considered plaintiff's "daily living activities"[4] and "lack of treatment." *Burch* 400 F.3d at 681. Plaintiff's growing list of minimally treated maladies (headaches, body aches, bit toe pain, liver problems and an esophagus condition) diminishes

---

[4] "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681.

her credibility. (AR 36, 89, 150, 152, 153, 199.) The record fails to support plaintiff's claim that pain spreads "all over" her body "everyday, continuously." (AR 116.) There is no record, as plaintiff claims, that a doctor told her she is "too unstable. I lose my balance." (AR 32.) Moreover, plaintiff initially testified her medications cause no side effects but at apparent prompting, claimed they make her sleepy although the medical record fails to highlight such complaints. (AR 37, 40.) The ALJ committed no error to evaluate plaintiff's credibility.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded plaintiff is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI, or alternatively, to remand for further proceedings. This Court DIRECTS the Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Brendan Collins and to close this action.

IT IS SO ORDERED.

**Dated:   April 26, 2005**          **/s/ Lawrence J. O'Neill**
66h44d                                                  UNITED STATES MAGISTRATE JUDGE